UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M-10-994**

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

JIAN HAO LIU,
HUNG DANH and
DIAMOND WEAH,

        Defendants.

C O M P L A I N T

(T. 18, U.S.C. § 1951(a))

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

        Jose Romero, being duly sworn, deposes and says that he is a detective with the New York City Police Department, deputized to the Federal Bureau of Investigation ("FBI") Task Force as a Task Force Officer, duly appointed according to law and acting as such.

        Upon information and belief, on or about and between August 16, 2010 and the present, within the Eastern District of New York and elsewhere, the defendants JIAN HAO LIU, HUNG DANH and DIAMOND WEAH, together with others, did knowingly and intentionally attempt to obstruct, delay and affect commerce and the movement of articles and commodities in commerce, by extortion, to wit: the attempted extortion of John Doe #1, an employee of a bus company, and John Doe #2, an owner of a bus company.

        (Title 18, United States Code, Sections 1951(a) and 2)

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Task Force Officer assigned to the FBI squad that investigates Asian organized crime since 2008. During my tenure with the FBI, I have participated in numerous organized crime investigations over the course of which I have conducted physical surveillance, executed search warrants, supervised the activities of cooperating witnesses, and reviewed recorded conversations of organized crime figures. Through my training, education and experience, I have become familiar with organized criminal activities.

2. As set forth below, there is probable cause to believe that the defendants JIAN HAO LIU, HUNG DANH and DIAMOND WEAH participated in the attempted extortion of an employee and the owner of a bus company ("VICTIM BUS COMPANY") that transports individuals between Worcester, Massachusetts and New York City, New York.

3. The VICTIM BUS COMPANY currently provides bus transport between Worcester, Massachusetts, and Brooklyn and Queens, New York.

4. John Doe #1, who is an employee of VICTIM BUS COMPANY, has advised:

a. On or about August 16, 2010, a group of males approached John Doe #1 in the vicinity of a parking lot located

---

[1] Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

at 60 Madison Street, Worcester, Massachusetts (hereinafter, the "Parking Lot"), and handed John Doe #1 a cellular telephone.

b. On the other end of the cellular telephone was a male (hereinafter, "UM#1"), who told John Doe #1, in sum and substance and in part, to tell the owner of VICTIM BUS COMPANY to either pay $50,000 or to stop providing bus service.

c. UM#1 then rolled up one of John Doe #1's shirt sleeves, wrote the telephone number (508) 246-8028 on the arm of John Doe #1, and directed John Doe #1 to have the owner of VICTIM BUS COMPANY call (508) 246-8028.

4. A review of a video recording taken of the vicinity of the Parking Lot on or about August 16, 2010, reveals the following:

a. Shortly after two vehicles, one of which appeared to be a light-colored Hyundai Elantra, entered the Parking Lot, a group of males approached John Doe #1.

b. One of the males then handed John Doe #1 a cellular telephone. The male later rolled up the shirt sleeve worn by John Doe #1 and appeared to write something on the arm of John Doe #1.

5. On or about August 25, 2010, John Doe #2, the owner of VICTIM BUS COMPANY, who was equipped with a recording device, placed a telephone call to (508) 246-8028. A male who answered the telephone call (hereinafter, "UM#2")[2/] told John Doe

---

[2/] Because John Doe #2 was not a party to the telephone call between John Doe #1 and UM#1, it is not clear whether UM#1 is the same individual as UM#2.

4

#2, in sum and substance and in part, to pay $50,000. UM#2 further warned John Doe #2, in sum and substance and in part, that if he did not comply, the VICTIM BUS COMPANY's buses would be damaged and/or the lives of the drivers employed by the VICTIM BUS COMPANY would be in jeopardy.

6. Later in the evening, on or about August 25, 2010, another male (hereinafter, "UM#3")[2/] placed a telephone call to John Doe #2, who was equipped with a recording device. UM#3 repeated the previous threat by UM#2 that if John Doe #2 did not pay $50,000, the lives of the drivers employed by VICTIM BUS COMPANY would be in jeopardy.

7. On or about August 26, 2010, at the direction of the FBI, John Doe #2 engaged in several phone conversations with one or more males who called from or answered telephone number (508) 246-8028, during which conversations they discussed how the above-referenced payment would be made. During one of those conversations, a male using telephone number (508) 246-8028 proposed that John Doe #2 send a payment by Western Union to "Biamond Weah." John Doe #2 ultimately agreed, in sum and substance and in part, that he would bring $10,000 to the Parking Lot at approximately 4:15 p.m. on August 27, 2010 and that he would make four subsequent payments of $10,000 in accordance with the demand.

---

[2/] Because John Doe #2 was not a party to the telephone call between John Doe #1 and UM#1, it is not clear whether UM#1 is the same individual as UM#3.

8. On August 27, 2010, at approximately 4:15 p.m., agents of the FBI equipped John Doe #2 with a recording device and directed him to wait in the Parking Lot. John Doe #2 brought $10,000 packaged in a blue gift bag. The agents then conducted surveillance in the vicinity of the Parking Lot and made the following observations.

    a. A red vehicle (hereinafter, "Vehicle #1") drove into a gas station located in close proximity to the Parking Lot and shortly thereafter drove into the Parking Lot.

    b. The driver of Vehicle #1, an Asian male, then exited Vehicle #1 and entered the back seat of a white SUV (hereinafter, "Vehicle #2"), which was already parked in the Parking Lot.

    c. The driver of Vehicle #2 pulled the driver's side of Vehicle #2 alongside the driver's side of a vehicle driven by John Doe #2, which was parked in the Parking Lot.

    d. Shortly thereafter, Vehicle #2 exited the Parking Lot.

9. Shortly after Vehicle #2 exited the Parking Lot, agents of the FBI conducted a car stop of Vehicle #2. In the front driver's seat was the defendant HUNG DANH, a Hispanic male; in the front passenger's seat was the defendant DIAMOND WEAH, an African-American male; in the rear seat directly behind the driver's seat, was the defendant JIAN HAO LIU, an Asian male. FBI agents recovered a blue gift bag containing $10,000 underneath the rear seat directly behind the driver's seat.

6

10. John Doe #2 has advised the following in regard to what transpired in the Parking Lot on August 27, 2010.

    a. Vehicle #2 pulled up alongside the vehicle in which John Doe #2 was driving.

    b. The driver of Vehicle #2, a Hispanic male, who was subsequently identified as the defendant HUNG DANH, asked, in sum and substance and in part, for "the money."

    c. John Doe #2 then gave the $10,000, which was packaged in the blue gift bag, to the individual in the driver's side passenger seat of Vehicle #2, an Asian male, who was subsequently identified as the defendant JIAN HAO LIU. The defendant JIAN HAO LIU then asked John Doe #2, in sum and substance and in part, when he would provide the remaining money.

WHEREFORE, your deponent respectfully requests that the defendants JIAN HAO LIU, HUNG DANH and DIAMOND WEAH be dealt with according to law.

                                Jose Romero
                                Task Force Officer, FBI

Sworn to before me this
27th day of August, 2010

THE HONORABLE ANDREW CARTER
United States Magistrate Judge
Eastern District of New York